UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANGHAI JINKO GREEN ENERGY ENTERPRISE MANAGEMENT CO., LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ABALANCE CORPORATION, et al.,<br><br>Defendants. | Case No. 24-cv-08828-JSC<br><br>**ORDER RE DEFENDANT WWB CORP.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION & FAILURE TO STATE A CLAIM**<br><br>Re: Dkt. No. 44 |

Plaintiffs sue Defendants for infringing their U.S. Patents 11,581,454 (the '454 Patent) and 11,824,136 (the '136 Patent). (Dkt. No. 37.)[1] Now before the Court is Defendant WWB Corporation's ("WWB") motion to dismiss the first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and alternatively under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 44.) After careful consideration of the parties' briefing, and having had the benefit of oral argument on July 24, 2025, the Court GRANTS WWB's motion to dismiss for lack of personal jurisdiction.

## BACKGROUND

**I.     FAC Allegations**

Plaintiffs are "a global leading photovoltaic (PV) module ('solar panel') manufacturer and energy storage system integrator." (Dkt. No. 37 ¶ 12.) Defendants "compete[] directly against [Plaintiffs] for customers of solar panels, including products that are designed for the same applications" as Plaintiffs' products. (*Id.* ¶ 16.) Among these products are Plaintiffs' "N-type

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

products." (*Id.* ¶ 14.) Plaintiffs "hold[] the leading position in the N-type TOPCon segment, with annual shipments of N-type TOPCon modules in 2023 reaching 48.4 GW." (*Id.*) Plaintiffs own both the '454 Patent and the '136 Patent (collectively the "Patents"). (*Id.* ¶¶ 27-30.) "Defendants are not currently licensed to practice the Asserted Patents." (*Id.* ¶ 31.)

Defendants are:

1- Vietnam Sunergy;

2- Vietnam Sunergy (BAC NINH);

3- VSUN Solar USA;

4- PubCo, which "is a Cayman Islands exempted company" and "is listed on the NASDAQ Capital market under the symbol 'TOYO' and shares an address with WWB";

5- TOYO Solar;

6- TOYO Texas;

7- TOYO Ethiopia;

8- WWB, which "is a parent company that has ownership and control over Vietnam Sunergy, Vietnam Sunergy (BAC NINH), VSUN Solar USA, PubCo, TOYO Solar, TOYO Texas, and TOYO Ethiopia."

(*Id.* ¶¶ 4-11.) Defendants "make[], use[], sell[], offer[] to sell, and/or import[] infringing solar panels" into the United States." (*Id.* ¶ 33.) Defendants' "solar panels, including its TOPCON N-type solar panels, use [Plaintiffs'] patented technology without authorization." (*Id.* ¶ 18.) Defendants market their product as "engineered in Japan," stating "VSUN is a Japanese-invested solar solution provider, with a vertically integrated supply chain." (*Id.* ¶ 19.) The only Defendants with Japanese addresses are WWB and PubCo. (*Id.* ¶ 20.) And PubCo is "a holding company that is not involved in the 'engineering' of the Accused Products." (*Id.* ¶ 21.) But, "WWB manufactures solar panels." (*Id.* ¶ 22.) WWB "introduce[s] the Accused products or components thereof into the stream of commerce with the knowledge that these items are destined for" the Northern District of California. (*Id.* ¶ 25.) Specifically, WWB "engag[es] in engineering design and providing technical support for the manufacturing of the Accused Products or

1  components thereof, with the knowledge and/or intent that these products are sold within the U.S.
2  market." (*Id.*)  WWB also "sell[s], offer[s] to sell, or import[s] in the United States components
3  that constitute a material part of the claimed material." (*Id.*)

### II.  Procedural Background

Plaintiffs filed their original patent infringement complaint against the presently named defendants and two other defendants no longer named in this suit. (Dkt. No. 1.)  In April 2025, three defendants, including WWB, moved to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim. (Dkt. No. 30.)  Rather than oppose the motion, Plaintiffs stipulated to dismissal of two moving defendants and amended their pleadings as to WWB. (Dkt. Nos. 37, 38, 39.)

Now before the Court is WWB's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 44.)

### ANALYSIS

To exercise personal jurisdiction over a nonresident defendant, a court must establish the defendant had at least "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up).  Personal jurisdiction can be either general or specific.  General personal jurisdiction exists " when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (cleaned up).  And specific personal jurisdiction arises when a defendant takes "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* at 359 (cleaned up).

The Court must apply Federal Circuit law to determine if it may properly "exercise[] personal jurisdiction over out-of-state defendants in patent infringement cases." *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002) (citations omitted); *see also Apple v. VoIP-Pal.com, Inc.*, 506 F. Supp. 3d 947, 960-61 (N.D. Cal. 2020) (applying this rule).  "Determining whether personal jurisdiction exists over an out-of-state defendant involves two

3

inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (cleaned up). And, where, as here, the state's long-arm statute is "coextensive with federal due process requirements," *Mavrix Photo, Inc. v. Brand Techs., inc.*, 647 F.3d 1218 1223 (9th Cir. 2011) (citing Cal. Civ. Proc. Code § 410.10), the "jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with due process." *Avocent*, 552 F.3d at 1329. A court must consider "(1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377-78 (Fed. Cir. 2015) (cleaned up). The plaintiff bears the burden of "affirmatively establishing the first two elements of the due process requirement," though once it meets its burden, "the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Id.* at 1378 (citations omitted). When the court's "determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden." *Id.* (citations omitted). Finally, "a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (citations omitted).

Plaintiffs do not argue the Court has general personal jurisdiction over WWB. Instead, they contend the Court has specific personal jurisdiction over WWB based on (1) "an agency theory because WWB controls TOYO Co. Ltd" which itself has conceded specific personal jurisdiction; and/or (2) "the stream of commerce theory" because WWB manufactures solar panels it knows or reasonably foresees will "end up in the United States and in California." (Dkt. No. 49 at 6.) The Court considers each argument in turn

### A. Agency Theory

"In order to establish jurisdiction under the agency theory, the plaintiff must show that the defendant exercises control over the activities of the third-party." *Celgard*, 792 F.3d at 1379

4

(citing *Daimler AG v. Bauman*, 571 U.S. 117, 135, n. 13 (2014)).  And although Federal Circuit law applies, "state law must be analyzed to determine whether the plaintiff has alleged and/or proven sufficient facts to support the application of the alter ego and veil-piercing doctrines," including under an agency theory of personal jurisdiction.  *Midwest Energy Emissions Corp. v. Berkshire Hathaway Energy Co.*, 762 F. Supp. 3d 788, 799 (S.D. Iowa 2025) (citing *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1336 (Fed. Cir. 2013) (holding "[t]o assess whether the district court properly pierced Taurus to reach Spangenberg, as alter egos of each other, we will (as would a Wisconsin state court) apply the law of Wisconsin, the state of Taurus's incorporation" to determine personal jurisdiction over that party.")); *see also*, *BASF Corp. v. Willowood, LLC*, 359 F. Supp. 3d 1018, 1025 (D. Colo. 2019) (holding "state law governs whether an alter ego relationship exists" or whether a subsidiaries' activities may be imputed to its parent.") (citing *Sys. Div., Inc. v. Teknek Elecs., Ltd.*, 253 F. App'x 31, 34 (Fed. Cir 2007); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 F. App'x 879, 885 (Fed. Cir. 2001)).

    The parties rely on California law, the forum state.  Under California law

> [t]he nature of the control exercised by the parent over the subsidiary necessary to put the subsidiary in an agency relationship with the parent must be over and above that to be expected as an incident of the parent's ownership of the subsidiary and must reflect the parent's purposeful disregard of the subsidiary's independent corporate existence.

*Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 542 (2000) (analyzing the degree of control required under California law to establish jurisdiction under the agency theory).  In other words, "[t]he parent's general executive control over the subsidiary is not enough; rather there must be a [] showing beyond simply facts evidencing the broad oversight typically indicated by [the] common ownership and common directorship present in a normal parent-subsidiary relationship."  *Id.* (cleaned up).

    WWB offers evidence it does not exercise control of TOYO.  Its president attests, "WWB does not control the operations of or make decisions for its subsidiaries in the VSUN Group or the TOYO Group."  (Dkt. No. 44-4 ¶ 7.)  WWB "does not provide engineering, design, or research

5

1    and development support for" either the VSUN or TOYO Groups.  (*Id.* ¶ 6.)  This evidence

2    controverts Plaintiffs' allegations of control so Plaintiffs' allegations need not be accepted.  *See*

3    *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 768 (N.D. Cal. 2025) ("However, the court 'may not

4    assume the truth of allegations in a pleading which are contradicted by affidavit.'") (quoting

5    *Apple, Inc. v. CoIP-Pal.com, Inc.*, 506 F. Supp. 3d 947, 957 (N.D. Cal. 2020) (quoting *Mavrix*

6    *Photo*, 647 F.3d at 1223)).

7    　　　　In response, Plaintiffs provide (1) an SEC filing indicating WWB is the controlling

8    shareholder of Toyo Co. Ltd and the two companies share a CEO; and (2) WWB and Toyo Co.

9    Ltd web pages which show the same address and phone number for the two companies.  (Dkt.

10   Nos. 49-2, 49-3, 49-4, 49-5.)  Plaintiffs also highlight statements from the SEC prospectus that

11   Toyo's "corporate actions that require shareholder approval will be substantially controlled by its

12   controlling shareholder, WWB," and that Toyo is "a 'controlled company' within the meaning of

13   the Nasdaq listing rules."  (Dkt. No. 49-5 at 6, 7.)  This evidence, separately or together, does not

14   meet Plaintiffs' prima facie burden.

15   　　　　First, that WWB is a controlling shareholder of Toyo Co. under the SEC's rules does not

16   show WWB has the requisite control to create an agency relationship sufficient to create personal

17   jurisdiction.  The SEC filing does not contradict WWB's president's sworn declaration to show

18   WWB's control goes "beyond the establishment of general policy and direction for the subsidiary

19   and in effect taken over performances of the subsidiary's *day-to-day* operations in carrying out

20   that policy."  *HDT Bio Corp. v. Emcure Pharms., Ltd.*, 704 F. Supp. 3d 1175, 1191 (W.D. Wash.

21   2023) (quoting *Van Maanen v. Youth With a Mission-Bishop*, 852 F. Supp. 2d 1232, 1249 (E.D.

22   Cal. 2012)).  And the SEC filing does not suggest "that the relationship between those entities

23   goes beyond the 'normal oversight of a parent over a subsidiary.'"  *In re ZF-TRW Airbag Control*

24   *Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 701 (C.D. Cal. 2022), *opinion clarified sub nom. In*

25   *re ZF-TRW Airbag Control Units Prods.*, No. LA ML 19-02905 JAK (FFMx), 2022 WL

26   19425927 (C.D. Cal. Mar. 2, 2022) (quoting In re Cal. Gasoline Spot Mkt. Antitrust Litig., No.

27   20-CV-03131-JSC, 2021 WL 4461199, at *2 (N.D. Cal. Sept. 29, 2021)).  All the SEC filing says

28   is "[Toyo Co.'s] corporate actions that require shareholder approval will be substantially

1 controlled by its controlling shareholder, WWB." (Dkt. No. 49-5 at 6.) In other words, all it
2 shows is that WWB owns majority shares in Toyo Co., which, as noted above, is insufficient to
3 show the parent controlled the child corporation in such a way that the child's actions are imputed
4 to the parent for jurisdictional purposes.

5       Second, that the two companies share CEOs and offices does not create an agency
6 relationship for purposes of personal jurisdiction. *See, e.g., Aliign Activation Wear, LLC v.*
7 *lululemon athletica inc.*, 22-cv-3339-SVW-JEM, 2020 WL 5790418, at *3 (C.D. Cal. Aug. 24,
8 2020) (holding no agency relationship where "two companies share interlocking directors,
9 officers, and personnel, and [the Defendant's] office spaces and resources are used to support the
10 Canadian entity's operations, including the acquisition of intellectual property rights); *HDT Bio*
11 *Corp. v. Emcure Pharms., Ltd.*, 704 F. Supp. 3d 1175, 1192 (W.D. Wash. 2023), *appeal*
12 *dismissed,* No. 23-4396, 2024 WL 3153368 (9th Cir. May 29, 2024) (holding no agency
13 relationship where the parent company "owns a majority of [the child company's] stock, has
14 previously held a majority of [the child company's] board seats, and has employees wearing
15 numerous 'hats'" because these "are all standard practices between corporate parents and their
16 subsidiaries."). Indeed, it is "'normal for a parent and subsidiary to have identical directors and
17 officers.'" *HDT Bio Corp.*, 704 F. Supp. 3d at 1192 (quoting *United States v. Bestfoods*, 524 U.S.
18 51, 61 (1998) (cleaned up)).

19       So, Plaintiffs have not met their burden to make a prima facie showing that an agency
20 relationship exists sufficient for the Court to exercise specific personal jurisdiction over WWB.

21       **B. Stream of Commerce Theory**

22       "The forum State does not exceed its powers under the Due Process Clause if it asserts
23 personal jurisdiction over a corporation that delivers its products into the stream of commerce with
24 the expectation that they will be purchased by consumers in the forum State." *World-Wide*
25 *Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) (citation omitted). However,
26 because the Supreme Court "has yet to reach a consensus on the proper articulation of the stream-
27 of-commerce theory," the Federal Circuit cautions courts assess "personal jurisdiction premised on
28 the stream-of-commerce theory on a case-by-case basis by inquiring whether the particular facts of

a case support the exercise of personal jurisdiction." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1362 (Fed. Cir. 2012).

WWB's President attests, "WWB sells solar panels under the Maxar brand, solely to the Japanese market. WWB does not sell its Maxar solar panels, or other products, to the U.S., does not advertise in the U.S., and does not solicit business from the U.S. market." (Dkt. No. 44-4 ¶ 4.) And he also states:

> WWB does not provide engineering, design, or research and development support for the VSUN Group (i.e., Vietnam Sunergy Joint Stock Company and its subsidiaries), the TOYO Group (i.e., TOYO Co. Ltd. and its subsidiaries), or for the Accused Products. WWB does not provide technical support for manufacturing or otherwise for the Accused Products, the VSUN Group, or the TOYO Group. WWB does not sell its products to the VSUN Group or the TOYO Group."

(*Id.* ¶ 6.) Furthermore, the VSUN Group's global Executive Vice President attests some of the accused products have not "been sold in the United States, and none of [them] are sold by WWB." (Dkt. No. 44-5 ¶ 4.) He adds, "WWB does not control the sales of VSUN solar modules including those that are listed in the First Amended Complaint. Since February 2023, WWB has not purchased VSUN solar modules from VSUN or asked VSUN to provide it with solar modules, to ship to the United States." (*Id.* ¶ 6.)

Plaintiff's evidence does not contravene the above evidence sufficient to support a prima facie showing. Plaintiffs cite the VSUN corporate family's website which states its solar panels are "[e]ngineered in Japan" and "VSUN is a Japanese-invested solar solution provider, with a vertically integrated supply chain." (Dkt. No. 37 ¶ 19.) Plaintiffs also cite the WWB website, which boasts of VSUN's achievements using the word "we." (Dkt. No. 49-2 at 4.) But Plaintiffs' inferences about the "Engineered in Japan" language are contradicted by the subsequent language qualifying that statement saying VSUN is "Japanese-invested" and remaining silent on any manufacture or production in Japan. And because Plaintiffs have not made a prime facie showing of WWB's control over VSUN, language touting VSUN's accomplishments cannot be imputed to WWB for purposes of specific personal jurisdiction. Further, the website statements, even drawing inferences in Plaintiffs' favor, do not contradict the direct language of both VSUN

8

Group's global executive vice president and WWB's president stating "WWB does not provide engineering, design, or research and development support for the VSUN Group." (Dkt. No. 44-4 ¶ 6.) This is especially true here where none of the accused products were "sold by WWB," and "WWB does not control the sales of VSUN solar modules including those that are listed in the First Amended Complaint." (Dkt. No. 44-5 ¶¶ 4, 6.))

*AFTG-TG*, is instructive. 689 F.3d at 1361. There, a plaintiff sued parent companies for patent infringement and argued the court had specific personal jurisdiction over the claims against the parent companies "under a 'stream-of-commerce' theory, contending that the defendants sold their products to various companies, who in turn sold them to consumers in Wyoming." *Id.* But the plaintiff did not include "any evidence and the complaint did not allege any facts that demonstrated the defendants' contacts with Wyoming." *Id.* Under those facts, the court held "[t]he paltry allegations in the complaint cannot support the exercise of personal jurisdiction in Wyoming." *Id.* at 1365. Specifically, the plaintiff did not "submit any declarations identifying sales in Wyoming that would refute the defendants' assertions that their contacts with Wyoming are sporadic at best." *Id.* And the plaintiff further failed to proffer "evidence indicating that Wyoming was part of any defendant's continuous, established distribution channels." *Id.* Like in *AFTG-TG*, there are no allegations that make a prima facie showing WWB actually availed itself of California.

Plaintiffs have provided no evidence tying WWB to the accused products or any product sold in the United States beyond its speculation that because accused products were "engineered in Japan," WWB engineered the products. So, Plaintiffs fail to show WWB had minimum contacts with the forum state based on a theory that WWB "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen*, 444 U.S. at 297-98.

### C. Whether Limited Jurisdictional Discovery is Warranted

Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting

9

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)).[2] Although Plaintiffs request jurisdictional discovery, they have failed to controvert pertinent facts as they provide no evidence to suggest WWB's or VSUN Group's unequivocal statements are false or inaccurate. So, the Court, in its discretion, declines to permit jurisdictional discovery. Should discovery relevant to the parties and claims in this case reveal a basis for personal jurisdiction of WWB, Plaintiffs may move for leave to amend.

\* \* \*

So, WWB's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) is GRANTED. Having so found, the Court need not decide Defendants' alternative motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

WWB's motion to dismiss for lack of personal jurisdiction is GRANTED without prejudice.

This Order disposes of Docket No. 44.

**IT IS SO ORDERED.**

Dated: July 28, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

---

[2] Whether jurisdictional discovery should be granted is made by the court's discretion, "applying the law of the regional circuit." *Univ. of Massachusetts v. L'Oreal S.A.*, 36 F.4th 1374, 1384 (Fed. Cir. 2022).